UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KACEY REYES,

        Plaintiff,

v.                                                                                    Case No. 8:24-cv-261-JRK

LELAND C. DUDEK,
Acting Commissioner of Social
Security, [1]

        Defendant.
_____

# **OPINION AND ORDER**[2]

## I.   Status

Kacey Reyes ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of "seizures, heart problems, migraines, and multiple mental health conditions" including bipolar disorder, conversion disorder, anxiety, and

---

[1]     Leland C. Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Dudek is substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

attention-deficit/hyperactivity disorder (ADHD). Transcript of Administrative Proceedings (Doc. No. 7; "Tr." or "administrative transcript"), filed March 25, 2024, at 79, 89, 236. Plaintiff protectively filed an application for DIB on March 25, 2021, alleging a disability onset date of either September 14, 2019 or December 31, 2020.[3] Tr. at 183-96, 197-98; see also Tr. at 46, 79, 89. Later, Plaintiff amended the alleged disability onset date to September 3, 2019. Tr. at 46, 48. The application was denied initially, Tr. at 88, 89-97, 105-08, and upon reconsideration, Tr. at 79-87, 98, 118-21.[4]

On April 3, 2023, an Administrative Law Judge ("ALJ") held a hearing,[5] during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 41-77. At the time of the hearing, Plaintiff was forty-four (44) years old. Tr. at 47. On June 8, 2023, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 13-33.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 7-8 (Appeals Council exhibit list and order), 177-79 (request

---

[3] Although actually completed on March 26, 2021, see Tr. at 197, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as March 25, 2021, see, e.g., Tr. at 79, 89.

[4] Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5] The hearing was held via telephone, with Plaintiff's consent. Tr. at 43-44, 135-36.

for review). On November 22, 2023, the Appeals Council denied Plaintiff's request for review, Tr. at 4-6, thereby making the ALJ's Decision the final decision of the Commissioner. On January 26, 2024, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), through counsel, seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the residual functional capacity ("RFC") assigned by the ALJ "failed to fully and completely account for all of Plaintiff's impairments." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 15; "Pl.'s Mem."), filed July 26, 2024, at 1, 4 (some emphasis and capitalization omitted). On August 23, 2024, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   **The ALJ's Decision**

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 15-33. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 3, 2019, the amended alleged onset date." Tr. at 15 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: conversion disorder with seizures or convulsions; bipolar disorder; anxiety disorder; borderline personality disorder; attention deficit disorder (ADD)[7]; obesity; chronic kidney disease; systemic lupus erythematosus." Tr. at 16 (emphasis and citation omitted). At step three,

---

[7] Attention deficit disorder (ADD) is an older term for the condition that is now diagnosed as attention-deficit/hyperactivity disorder (ADHD). See Difference Between ADD and ADHD, located at https://www.webmd.com/add-adhd/childhood-adhd/add-vs-adhd (last visited March 25, 2025).

- 4 -

the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) with the following limitations: [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and walk six (6) hours out of an eight-hour workday; and sit six (6) hours out of an eight-hour workday. [Plaintiff] needs to alternate between sitting and standing approximately every 45 minutes for one (1) to three (3) minutes. During that time, [Plaintiff] will remain at the workstation and working. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] should avoid all exposure to hazards. [Plaintiff] is able to understand, carry out, and remember simple, routine, and repetitive tasks, involving only simple, work-related decisions, in a work environment that does not require assembly line pace or adherence to strict production standards. [Plaintiff] can adapt to gradual, routine workplace changes. [Plaintiff] can have occasional interaction with supervisors; can work in proximity to co-workers, but not with them; and can have incidental public interaction, but no direct customer service.

Tr. at 20-21 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform past relevant work" as "an administrative assistant." Tr. at 31 (some emphasis and citation omitted). The ALJ then proceeded to step five. Tr. at 32-33. After considering Plaintiff's age ("40 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are other jobs that exist

in significant numbers in the national economy that [Plaintiff] can perform," such as "classifier," "garment sorter," and "marker." Tr. at 32-33 (some emphasis and citations omitted). The ALJ concluded Plaintiff was "not under a disability . . . from September 3, 2019, through the date of th[e D]ecision." Tr. at 33 (emphasis and citation omitted).

## III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial

evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff contends the ALJ erred in assessing an RFC (and in posing a hypothetical to the VE) that did not sufficiently account for her mental impairments. Pl.'s Mem. at 6-12. In particular, Plaintiff alleges the RFC and hypothetical were "devoid of any restrictions addressing Plaintiff's moderate limitation in her ability to concentrate and persist, and her ability to adapt or manage herself." Id. at 7; see also id. at 12. Plaintiff points to the opinions of non-examining state-agency doctors indicating Plaintiff has moderate limitations in various functional areas and argues "the ALJ did not account for these moderate limitations in the RFC or at least it is not readily apparent how she did so." Id. at 9. As to Plaintiff's conversion disorder that causes seizures or convulsions in high stress situations, Plaintiff concedes the ALJ assessed certain limitations as safety measures for seizures but contends the ALJ erred because she "fail[ed] to account for the inherent stress involved in any job" and stress-related issues with leaving the home and being around people. Id. at 13-14. For this argument, Plaintiff relies substantially on her testimony about how

her impairment affects her. See id. Responding, Defendant contends that "substantial evidence supports the ALJ's assessment of Plaintiff's mental limitations in the RFC," and that "the ALJ properly considered Plaintiff's subjective reports that various stressors exacerbated her psychogenic seizure disorder when assessing the RFC." Def.'s Mem. at 5, 13 (emphasis omitted).

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any

>           measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245,

1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

An ALJ poses a hypothetical question to a VE as part of the step-five determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Brunson v. Astrue, 850 F. Supp. 2d 1293, 1303 (M.D. Fla. 2011) (quoting Corbitt v. Astrue, No. 3:07-cv-518-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished)).

Here, the ALJ recognized—and assigned as severe impairments—Plaintiff's diagnoses of "conversion disorder with seizures or convulsions; bipolar disorder; anxiety disorder; borderline personality disorder; [and ADHD]." Tr. at 16. Then, the ALJ assessed the broad areas of mental functioning set forth in the Regulations and 20 C.F.R. Part 404, Subpart P, Appendix 1, and found Plaintiff has moderate restriction in understanding, remembering, or applying information; moderate restriction in interacting with others; moderate restriction in concentrating, persisting, or maintaining pace; and moderate restriction in adapting or managing oneself. Tr. at 18-19. The

ALJ then recognized that:

> The limitations identified in the "paragraph B" criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.

Tr. at 20.

The ALJ then assigned the RFC, which "reflects the degree of limitation the [ALJ] found in the 'paragraph B' mental function analysis." Tr. at 20. Particularly regarding the mental impairments, the ALJ limited Plaintiff as follows:

> [Plaintiff] is able to understand, carry out, and remember simple, routine, and repetitive tasks, involving only simple, work-related decisions, in a work environment that does not require assembly line pace or adherence to strict production standards. [Plaintiff] can adapt to gradual, routine workplace changes. [Plaintiff] can have occasional interaction with supervisors; can work in proximity to co-workers, but not with them; and can have incidental public interaction, but no direct customer service.

Tr. at 21.

The ALJ also discussed, in detail, Plaintiff's allegations and providers' findings regarding her seizures or seizure-like activity:

> [Plaintiff] alleges disability because of a combination of physical and mental impairments, with her most limiting symptoms being recurrent seizure-like events, referred to in her various statements and this decision as psychogenic seizures or simply "seizures" or

> "events." Before a seizure, she feels lightheaded and confused. She then falls to the ground and her muscles contract. Her arms, hands, legs, feet, and torso shake and jerk. Her breathing is labored and she gasps for air and screams. Her body gets very hot. For hours after a seizure, she reports experiencing exhaustion, lightheadedness, confusion, body aches, headaches, and tremors. She feels she is forgetful about conversations happening just before or after a seizure. It takes her at least four to six hours to resume normal activity after a seizure. These seizures occur approximately once or twice a week at all times of day and night, when awake or asleep, and last three to five minutes per event. She is not sure what causes these seizures. They often occur when stressed or anxious but can also occur without activity or when not anxious. She has undergone neurological workup and multiple examiners have felt that these are nonepileptic psychogenic seizures or pseudoseizures related to a conversion disorder rather than epileptic seizures. These seizures have not changed significantly in frequency since she stopped working.

Tr. at 21.

Regarding the other mental limitations alleged, the ALJ summarized:

> She also has mental diagnoses of bipolar disorder, anxiety, and attention deficit hyperactivity disorder (ADHD), and had previously been diagnosed as having borderline personality disorder. She is typically anxious and is easily overwhelmed by basic activities, including leaving the home, shopping, and being in crowds. She has difficulty with focus and distraction because of her ADD and anxiety. She is easily sidetracked and testified she has left the stove on or the faucet running because of her distractibility. She gets along with her family but does not really have friends. She does not really trust others and is uncomfortable around others. Because of her bipolar disorder, she experiences periods of mania, where she can be loud,

- 12 -

> hyperactive, combative, and inappropriate, and periods of depression, where she feels low, avoids others, cries, and neglects her personal care. She reports she is able to attend to her personal care independently, including bathing and grooming. She can complete light household chores, prepare simple meals, shop by computer, care for her children and pets, and engage in hobbies including reading, painting, and watching television. She uses reminders on her phone to remember to take her medications. She lays down and naps a couple of times a day. She no longer drives due to her seizures.

Tr. at 22 (citations omitted).

As to Plaintiff's allegations about how her impairments affect her, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 22. The ALJ then detailed the medical evidence and acknowledged the challenges with the seizures and rather consistent observations among medical providers that they are likely psychogenic in nature. Tr. at 22-26. At the end of the day, the ALJ found:

> [Plaintiff's] statements concerning the intensity, persistence and limiting effects of her symptoms are partially consistent with the medical evidence and other evidence in the record. [Plaintiff's] most limiting symptoms are her psychogenic seizures, which she reports occur from between twice a month to multiple times a week. She has undergone extensive neurological workup including multiple EEGs,

head/brain imaging, and AED trials, which are all unrevealing and do not suggest these events are epileptic in nature. Even though these events are most likely nonepileptic psychogenic seizures rather than epileptic seizures, they do appear to be acute events largely outside [Plaintiff's] control that are typically brought about by increased stress. She does have other severe mental impairments other than her conversion disorder with associated seizures or convulsions, for which she is under the care of psychiatry and is prescribed multiple psychotropic medications. [Plaintiff's] seizures began while she was working as an executive assistant at her most recent job, with [Plaintiff] described as having significant interpersonal and organizational demands, including as serving as an unofficial mediator between co-workers. Given [Plaintiff's] history of anxiety with emotional lability and diagnoses of bipolar and personality disorders, it is certainly understandable that these demands would cause [Plaintiff] some mental distress, including triggering the types of psychogenic seizures reported by [Plaintiff].

That being said, although [Plaintiff] reported ongoing seizures even after she reduced and discontinued working and has described severe, persistent anxiety and fear in connection with her application for benefits, her mental health treatment records reflect she generally reported her other mental [symptoms] were well managed. While she has reported a history of psychiatric hospitalizations, there have been no acute medical needs for mental health issues other than for her psychogenic seizures since 2017. Furthermore, even while experiencing these events at the frequency reported since the amended alleged onset date together with her reported mental symptoms, she generally retained the ability to perform most activities of daily living independently or with little assistance in the way of reminders and encouragement. She has served as the caretaker for her ill father during the relevant period and reports engaging in normal activities such as

> planning and hosting birthday parties for her children and attending social events, albeit with use of anxiety medications. During in-person and video appointments with her mental health providers, she was often noted as appearing anxious and/or depressed, and at times tearful, restless, and/or fearful, but was consistently alert, oriented, and well groomed, with intact memory, fair to good insight and judgment, and generally appropriate thought processes, other than some occasional notes of ruminative processes. Given her persistent mood symptoms and observable anxiety, the undersigned agrees she had some degree of continued mental symptoms which support limitations in mental functioning; however, the medical evidence of record does not indicate her emotionality or anxiety were as poorly controlled or that her overall functioning was as limited by her mental symptoms and seizures as alleged. The undersigned agrees that [Plaintiff's] combined impairments would preclude her from doing the admittedly mentally demanding work of an administrative assistant; however, the totality of the evidence supports the conclusion that she has the [RFC] to perform a less demanding range of work.

Tr. at 26-27 (citations omitted).

These unchallenged findings are the main basis upon which the RFC was formed and are supported by substantial evidence. The ALJ even noted that the seizures "create safety concerns" and limited Plaintiff's physical capacities accordingly in the RFC. Tr. at 27, 20-21. Plaintiff challenges the RFC as not including all of Plaintiff's mental limitations, but the ALJ's articulated mental-related functions in the RFC adequately account for the moderate limitations in each of the four broad functional areas. The ALJ's Decision reflects thoughtful consideration of the mental impairments and need not be disturbed.

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence. Based on the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 27, 2025.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record